## BEHRE et al. v. ANCHOR INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. January 7, 1924.)

No. 100.

1. **Injunction ⊛136(1)—Reasonable necessity for protection of rights must be shown.**

   To warrant granting of an injunction for preservation of property which is the subject of litigation, it must appear that the act, sought to be prevented is such as to afford reasonable ground for belief that injury will result if no injunction is granted and that it is not sought merely because of fear or apprehension.

2. **Injunction ⊛137(1)—Preliminary injunction to restrain payment of money not authorized where defendant is solvent.**

   In a suit to recover a fund in possession of defendant, there is not sufficient ground for granting a preliminary injunction to restrain defendant from paying over the fund to another, where defendant is abundantly solvent.

3. **Injunction ⊛144—Allegations on information and belief insufficient to sustain injunction.**

   In the federal courts of equity, allegations on information and belief, unsupported by proof, are insufficient to sustain an injunction.

4. **Courts ⊛347—Proof held insufficient to warrant preliminary injunction.**

   Under equity rule 25(5), providing that, "if special relief pending the suit be desired, the bill should be verified by the oath of the plaintiff or some one having knowledge of the facts upon which such relief is asked," a bill verified by complainant's attorney, not shown to have personal knowledge of the facts, and an affidavit by him, do not constitute sufficient proof in which to grant a preliminary injunction.

5. **Injunction ⊛147—Preliminary injunction not granted, where equities of bill are fully denied under oath.**

   Where the equities of a bill are fully and explicitly met by denial under oath, a court does not usually issue an injunction pendente lite, but allows the matter to await a final hearing.

6. **Injunction ⊛135—Discretion to grant preliminary injunction exercised according to principals of equity.**

   While the granting of a preliminary injunction lies within the discretion of the trial court, such discretion must be exercised according to the well-known and established principles of the equity courts.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Ernst Behre and others, partners as H. Mutzenbecher, Jr., against the Anchor Insurance Company of New York. From an order granting a preliminary injunction, defendant appeals. Reversed.

The plaintiff Ernst Behre is a citizen of Russia, but a resident of the republic of Germany. Herman and Franz Mutzenbecher are citizens of the republic of Germany and residents of the city of Hamburg, as was Carl Christian Stahl at the time of his death. They were partners in the business of insurance, with their principal office and place of business in Hamburg, Germany. The partnership dated from December 4, 1907. In August, 1922, Stahl died, and Franz Mutzenbecher was appointed executor of his will and acted as such. Under the German Commercial Code a partnership is terminated by the death of one of its members, unless the contract of partnership otherwise provides. In the case of the partnership herein involved the contract provided that in case of the death of one of the partners the partnership was to continue be-

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tween the surviving partners, and at all times since the death of Stahl the plaintiffs have continued the business of the partnership.

This suit was commenced prior to Stahl's death, and in February, 1923, his death was suggested upon the record, and thereupon by an order duly entered the cause was continued by the plaintiffs as the surviving and present partners of the firm of H. Mutzenbecher, Jr. The Anchor Insurance Company of New York, as its name implies, is a New York corporation. It is engaged in conducting a fire and marine insurance business. The Jakor Insurance Company of Moscow, Russia, exists under and by virtue of the laws of the republic of Russia, with general power to transact the business of insurance, and with authority to establish branch offices and places of business in other countries.

The plaintiffs, together with the said Stahl, now deceased, on June 28, 1922, filed a bill of complaint in the court below against the Jakor Insurance Company, wherein they prayed an accounting against the defendants for commissions on reinsurances effected by the plaintiffs for the Jakor Insurance Company under an alleged agreement therefor between it and the plaintiffs, liability whereon was assumed by the Anchor Insurance Company. The bill alleged the making of the agreement and that the plaintiffs procured the appointment of a United States manager for the Jakor Insurance Company, and entered it in the United States, and obtained agreements for reinsurance for it with other insurance companies. It further alleged that the plaintiffs worked the business by doing the mapping and carding of the risks reinsured and received the agreed commissions from the Jakor Insurance Company, except a part allowed to accumulate and remain in the United States as a credit to the plaintiffs, in order to strengthen the company's financial condition in the United States, up to the time of the European War, when communications became difficult, and as a result there were further accumulations of commissions in the United States.

The Alien Property Custodian, on November 9, 1918, and at subsequent times, seized certain specific funds as the property of the plaintiffs, and the equivalent of a part of the said accumulated commissions, the exact amount of which the bill alleged the plaintiffs did not know. The bill further alleged that the Jakor Insurance Company had presented a claim to the United States government for the said funds alleging that they were its property. The plaintiffs alleged that they were entitled to have the United States government hold the said funds as their property. The bill alleged that the Jakor Insurance Company had transferred its United States business, with all the assets, to the defendant herein, the Anchor Insurance Company of New York, which assumed the liabilities, including the one to the plaintiffs herein for commissions.

The bill then asked for an accounting for the commissions subject to credit for all sums paid to the Alien Property Custodian as the property of the plaintiffs, provided the sums shall be properly adjudged their property, and for the payment of such sums as may be found due to the plaintiffs, and for a decree that the defendants account periodically to them for any sum becoming due hereafter by the terms of the agreement. The Jakor Insurance Company was, by an order duly made on August 24, 1922, dismissed without prejudice from the cause. The defendant, Anchor Insurance Company, entered its appearance on June 29, 1922, and served its answer on August 22, 1922.

The plaintiffs allege that after the original bill herein was filed the Jakor Insurance Company assigned or purported to assign its claim against the United States government to the defendant, the Anchor Insurance Company; that the said defendant has actively renewed its claim, and has pressed for the allowance of the claim presented to the United States government. The plaintiffs allege that the defendant disputes the correctness of the determination of the Alien Property Custodian, that the funds taken over by him belong to H. Mutzenbecher, Jr., that is, to the plaintiffs, and alleges that a very large part, if not all, of the said fund was the property of the Jakor Insurance Company, and claims under its alleged assignment, and that H. Mutzenbecher, Jr., had no interest of any kind therein. The plaintiffs aver on information and belief that the money and property so seized and taken over was and is their money and property, and that the said money and property was and is

held for them by the said Alien Property Custodian as their trustee; that the defendant at all times and before the said alleged assignment had full knowledge and notice of the plaintiffs' claim to, and interest in, the said fund.

Then it is alleged that the Attorney General of the United States, by virtue of the power and authority vested in him by the Trading with the Enemy Act and the amendments thereto, and executive orders and proclamations thereunder, is about to order, or has ordered, the payment to the Anchor Insurance Company of the said fund, amounting to $213,000.08, against the plaintiffs' protest, and that the Alien Property Custodian, without the plaintiffs' consent, is about to pay over, or has paid over, to the said Anchor Insurance Company the said fund of $213,000.08 held by him as the plaintiffs' trustee. It is further alleged that the plaintiffs believe and aver that the defendant intends to transmit the said fund abroad to the Jakor Insurance Company of Russia. so that the plaintiffs will be unable to follow or recover it, unless the defendant is restrained by injunction from so dealing with the said fund.

The supplemental bill in conclusion asks that the fund of $213,000.08 seized by the Alien Property Custodian as the property of H. Mutzenbecher, Jr., be decreed and determined to be the fund and property of the plaintiffs, and be ordered to be paid over to them. It also asks that the defendant be restrained during the pendency of this suit from paying out, transferring, concealing, removing from the United States, or otherwise disposing of the fund of $213,000.-08, received from the Alien Property Custodian. They also ask an accounting and the costs and disbursements of the suit.

On February 14, 1923, an order was made requiring defendant to show cause why the preliminary injunction prayed for in the supplemental bill of complaint should not issue; and on April 13, 1923, the motion came on to be heard upon the supplemental bill and affidavits in opposition to and in support of the motion, and an injunction pendente lite was issued on May 16, 1923. From the order granting the injunction the defendant appealed to this court.

The president of the defendant corporation submitted an affidavit, duly verified by him, at the hearing upon the motion for an injunction. That affidavit set forth the relations in detail which existed between the Jakor Insurance Company of Russia, and the copartnership of H. Mutzenbecher, Jr., of Hamburg, Germany, as the agent of that company in the conduct of its insurance business in this country, and also the purchase by the defendant of the assets of the United States branch of the Jakor Insurance Company, and its assumption of the liabilities of that company, and it declares that at the time it made this purchase and assumed these liabilities, which was in January, 1922, and not until this suit was commenced in June, 1922, did it have any knowledge or notice of the existence of any claim of any kind in favor of the plaintiffs.

Barker, Donohue, Anderson & Wylie, of New York City (Ira L. Anderson, and Joseph E. Worthington, Jr., both of New York City, of counsel), for appellant.

Carl L. Schurz, of New York City (Hartwell Cabell, of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The plaintiffs sought by their bill to enjoin the Anchor Insurance Company of New York from removing from the United States or otherwise disposing of the sum of $213,000.08, which it is alleged it received from the Alien Property Custodian, but which the plaintiffs claim belongs to them. The injunction is one pendente lite. It appears that the defendant, who is enjoined, is engaged in the business of insurance, and, being a New York corporation, it is under the supervision of the superintendent of insurance of the state of New York. Its affairs were carefully examined into by representatives of that official late in 1922, and the injunction was granted in May following. The

report officially made to the superintendent of insurance as of December 31, 1922, shows that its assets at that time, not taking into consideration the fund of $213,000.08 herein involved, exceeded its liabilities by more than $1,300,000. It thus appears that this defendant, a few months before this injunction was issued, was far from being in an insolvent condition; and there is nothing in the record to show that its condition changed for the worse between December 31, 1922, and May 16, 1923, when the injunction issued.

The supplemental bill contains no allegation of the defendant's insolvency; but it does contain an allegation that the plaintiffs will suffer irreparable injury if the injunction is not issued. It alleges that the plaintiffs "believe and aver that the defendant intends to transmit the said fund abroad" to the Jakor Insurance Company of Moscow, Russia, so that the plaintiffs will be unable to follow or recover it, by which we understand that the plaintiffs mean that, if the fund were transmitted to Moscow, they would be unable to recover it; but it would not be necessary to follow the fund to Moscow. If the defendant is solvent, and wrongfully and with notice of the plaintiffs' rights pays over the money to some one not entitled to receive it, the plaintiffs will be able to compel the defendant to pay over to the plaintiffs the moneys which belong to them, and it is impossible to see how in that event any irreparable damage has resulted.

If the money in the hands of this defendant belongs in fact to these plaintiffs, no one will deny that they have a remedy at law for its recovery. It is also true that equity sometimes interferes for the preservation of property which is the subject of litigation; but, when it does so, it is because such interposition is necessary for the protection of the property. Thus, for example, if the person in possession is insolvent, and there is consequent danger of the possible loss of the fund pending litigation, the injunction issues to preserve the status quo until the end of the litigation.

[1, 2] To warrant the issuance of an injunction, the injurious act sought to be prevented must be such as to afford a reasonable ground for believing that injury will be done if no injunction is granted, and that it is not sought because of mere fear or apprehension. Jenny v. Crase, 1 Cranch, C. C. 443, Fed. Cas. No. 7,285; Reynolds v. Everett, 144 N. Y. 189, 39 N. E. 72; Buffalo v. Pocahontas, 85 Va. 222, 7 S. E. 238. Upon the facts disclosed in this record there is no reasonable ground for believing that, if these plaintiffs establish their right to the fund of $213,000.08, which they claim is theirs, they will have any trouble in obtaining payment of it. The facts disclosed do not show that any irreparable injury is immediately impending, and will be visited upon the plaintiffs before the case can be brought to a final hearing; and in the absence of such a showing a preliminary injunction is ordinarily not granted. Camunas v. New York & P. R. S. Co., 260 Fed. 40, 171 C. C. A. 76; State of Ohio v. Cox (D. C.) 257 Fed. 334; Love v. Atchison, Topeka, etc., R. Co., 185 Fed. 321, 107 C. C. A. 403; Milk Co. v. Baker (C. C.) 168 Fed. 111; Miller v. Mutual Reserve Fund Life Association (C. C.) 109 Fed. 278; Ahern v. Newton & B. St. Ry. Co. (C. C.) 105 Fed. 702; Ryan v. Seaboard, etc., R. Co. (C. C.) 89 Fed. 385; De Neufville v. New York & North-

ern Ry. Co. (C. C.) 84 Fed. 391; Zinsser v. Cooledge (C. C.) 17 Fed. 538; Fremont v. Merced Min. Co., 9 Fed. Cas. 772, No. 5,095; United States v. Duluth, 25 Fed. Cas. 923, No. 15,001.

The general rule is that equity does not interfere to restrain the payment of money, where there is a complete remedy at law, there being no allegation of the insolvency of the person, or, if such an allegation be made, it is shown to be untrue in fact. Dulaney v. Scudder, 94 Fed. 6, 36 C. C. A. 52; Lawson v. Virgin, 21 Ga. 356; Zellenkoff v. Collins, 23 Hun (N. Y.) 156; Rogers v. Marshall, 38 How. Pr. (N. Y.) 43; Brownston v. Cropper, 1 Litt. (Ky.) 173; Davis v. Fulton, 1 Overt. (Tenn.) 121. And a bank will not be enjoined from paying out money where it has such notice that payment would be at its peril. Pettey v. Dunlap Hardware Co., 99 Ga. 300, 25 S. E. 697. And see Perry v. Thompson, 108 Ala. 586, 18 South. 524.

[3] A mere allegation that an apprehended act will inflict irreparable injury is not enough to justify the issuance of an injunction. Facts must be alleged from which it can be reasonably inferred that such would be the result; and if no such facts are alleged, and this bill alleges none, the bill is fatally defective. Cruickshank v. Bidwell, 176 U. S. 73, 81, 20 Sup. Ct. 280, 44 L. Ed. 377. In this case the allegation of the bill is that the plaintiffs "believe and aver" that the defendant intends to transmit the fund abroad. In the equity courts allegations upon information and belief, unsupported by proof, are insufficient to sustain an injunction. 2 Foster's Federal Practice, 1436; In re United Wireless Telegraph Co. (D. C.) 201 Fed. 445.

[4] Equity rule 25, subd. 5, provides that:

"If special relief pending the suit be desired, the bill should be verified by the oath of the plaintiff, or some one having knowledge of the facts upon which such relief is asked."

The supplemental bill in this case is verified by the attorney for the plaintiffs upon the ground that the plaintiffs are not within the county where deponent has his office. There is no allegation anywhere in the bill that there is any other reason why the plaintiffs do not verify the bill, nor why some one having knowledge of the facts does not verify it. Most of the allegations of the bill purport to be made upon knowledge, although upon examination of these allegations it is apparent that they are of such a character that the attorney cannot have knowledge of them. Some of the allegations, however, purport to be made upon information and belief; but there is nothing to show why the attorney believes that the statements are true, other than the general allegation in the verification that the sources of his information and the grounds of his belief are conversations with the plaintiffs and contracts, letters, and correspondence which the attorney has examined. And it appears that the affidavit, in support of the motion for injunction, is also verified by the attorney It does not appear which of the allegations is made upon knowledge, and which upon information and belief. The source of his knowledge is left vague and indefinite. No one having knowledge of the facts upon which the relief is asked has verified any of the papers. See Scheuerle v. Onepiece Bifocal Lens Co. (D. C.) 241 Fed. 270, 273.

[5] But if the complainants in their bill had set forth the necessary allegations, and had properly verified them, no injunction should have issued pendente lite; for the affidavit made by the president of the defendant company and submitted at the hearing upon the motion for the injunction was sufficient to prevent the issuance of such an injunction. His affidavit upon a motion of the character of this one was sufficient to overcome the equities of the bill. Where the equities of a bill are denied fully and explicitly under oath, a court usually does not issue an injunction in limine, but allows the matter to await a final hearing. Société Anonyme Du Filtre Chamberland, etc., v. Consolidated Filters Co., Inc. (D. C.) 248 Fed. 358, 360; Photo-Drama Motion Picture Co. v. Social Uplift Film Corporation (D. C.) 213 Fed. 374; Owsley v. Yerkes (C. C.) 185 Fed. 686, 688; Woodside v. Tonopah & G. R. Co. (C. C.) 184 Fed. 358, 360.

[6] It is true that the granting of a preliminary injunction lies within the discretion of the court. Buffington v. Harvey, 95 U. S. 99, 24 L. Ed. 381. The discretion must be exercised according to the well-known and established principles of the equity courts. The discretion with which the court is invested is not a freedom to act in any manner the court may arbitrarily determine. But it must exercise a sound discretion according to the recognized and well-established rules of equity. And there can be no doubt that, if the court clearly abuses its discretion, the appellate court can and should correct its error. Shea v. Nilima, 133 Fed. 209, 66 C. C. A. 263.

Order reversed.